STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 1249

TAMMY CARLTON AND DAVID CARLTON

VERSUS

MICHELLE VOUGHT AND FOREMOST INSURANCE COMPANY

**Judgment Rendered:   MAY 1 1 2020**

* * * * * *

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Suit Number 153649

Honorable Robert H. Morrison, III, Presiding

* * * * * *

| | |
|---|---|
| J. Rodney Messina<br>Janna Messina Kiefer<br>Baton Rouge, LA | Counsel for Plaintiffs/Appellants<br>Tammy Carlton and David Carlton |
| Valerie Briggs Bargas<br>Kolby P. Marchand<br>Baton Rouge, LA | Counsel for Defendants/Appellees<br>Michelle Vought and Foremost<br>Insurance Company Grand Rapids,<br>Michigan |

* * * * * *

BEFORE: WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.

---

[1] Judge William J. Burris, retired, serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**GUIDRY, J.**

Plaintiff, Tammy Carlton, appeals from a trial court judgment dismissing her claims against defendants, Michelle Vought and Foremost Insurance Company (Foremost). For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 23, 2015, Carlton was at the home of Vought, on the front porch, when she was bitten by Vought's dog. Thereafter, on October 24, 2016, Carlton filed a petition for damages, naming Vought and her homeowner's insurer, Foremost, as defendants, asserting that on the date in question, she was invited to Vought's home and after her arrival, Vought's dog attacked her, without provocation, causing her injury to her left breast and emotional trauma. Accordingly, Carlton sought damages for defendants' fault and negligence. The defendants answered the petition, asserting several affirmative defenses.

Following a trial of this matter on May 3, 2019, the trial court signed a judgment on June 10, 2019, finding that it "cannot conclude that Defendants are legally liable for the injuries Plaintiff sustained" and rendering judgment in favor of defendants, dismissing Carlton's claims against them. Carlton now appeals from the trial court's judgment.[2]

## DISCUSSION

The law governing claims for damages caused by animals is La. C.C. art. 2321, which provides:

> The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog. Nothing in

---

[2] David Carlton dismissed his loss of consortium claim at the start of trial.

2

this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

In addressing the requirements of establishing liability under this article, the Louisiana Supreme Court in Pepper v. Triplet, 03-0619, pp. 1-2 (La. 1/21/04), 864 So. 2d 181, 184, held:

> [T]o establish a claim in strict liability against a dog owner under La. Civ.Code art. 2321 as amended in 1996, the plaintiff must prove that his person or property was damaged by the owner's dog, that the injuries could have been prevented by the owner, and that the injuries did not result from the injured person's provocation of the dog. We hold that, to establish that the owner could have prevented the injuries under Article 2321, the plaintiff must show the dog presented an unreasonable risk of harm.

The criterion for determining whether a defendant has created or maintained an unreasonable risk of harm is a balancing of claims and interest, a weighing of the risk and gravity of harm, and a consideration of individual and societal rights and obligations. Pepper, 03-0619 at p. 21, 864 So. 2d at 195-196; see also Thibodeaux v. Krouse, 07-2557, p. 4 (La. App. 1st Cir. 6/6/08), 991 So. 2d 1126, 1129.

According to the record, Carlton visited Vought's mother, who lived next door to Vought, on December 23, 2015, and the two women went shopping. Carlton testified that she had been invited to Vought's home for Christmas dinner and after shopping, she and her husband went to Vought's home and started drinking on Vought's front porch with Vought's mother. Sometime thereafter, Carlton called her friend, Warren Gable, to pick her up and bring her to her house to get her karaoke equipment. Carlton returned with speakers, a microphone, cords, a laptop, and a soundboard and set up her equipment on Vought's front porch. Vought, her husband, and son were inside the home, and Vought was cooking dinner. Vought thereafter came outside and said the music was too loud and told Carlton to turn it down. Carlton told Vought she would turn it off, because she could not get her computer to work, but according to Carlton, Vought got mad and punched her in the head. Carlton stated the next thing she knew, Vought's pit bull, Theresa Teapot,

3

came from under the table and bit her on her breast. Carlton stated that prior to the incident, Vought's three dogs, two pit bulls and a Yorkie, were inside the house. Carlton further stated that she had seen the dogs on prior occasions, and they were always kept inside or in the back yard. Carlton stated that Theresa Teapot had never shown any aggression toward her and had never growled at her or tried to bite her. Additionally, Carlton was not aware of the dog acting aggressively toward anyone else.

Vought, however, testified that Carlton was not invited to her home on December 23, 2015, but rather, Carlton was visiting with Vought's mother. Vought stated that she did not know anything about karaoke or how the equipment got on her front porch. Vought stated that she went out on the porch twice to tell Carlton, who was drunk and belligerent, to turn the music down, and the second time, she asked Carlton to leave. Vought stated that Carlton threw a bottle on the table and it "busted all across [her]," and that is when she hit Carlton. Vought's husband thereafter grabbed Vought and pulled her back inside the house, told Carlton to leave, and shut the door. Vought stated that all of her dogs remained inside the house, and that no dog was on the porch during her altercation with Carlton. Vought stated that all three dogs know the only way they could cross the threshold of the door is if they are on a leash. With regard to Theresa Teapot, Vought stated that she adopted the dog, who had been abandoned in a ditch at six weeks old, through the "Pit Bulls and Parolees" television show. Vought stated that neither Theresa Teapot nor any of her other dogs had ever exhibited aggressive behavior before this incident, and that Theresa Teapot was scared of her own shadow. In fact, Vought stated her home was broken into two months prior, while she, her husband, and the dogs were inside, and that her dogs did not even do anything.

Warren Gable, Carlton's friend, also testified at the trial. Gable was not present when the incident occurred and did not see Carlton get bitten by a dog, but

4

Carlton called him to pick her up after the incident. Gable stated when he picked Carlton up from Vought's home, he saw a brown and white dog on the front porch. Gable stated he brought Carlton to his house, whereupon she showed him the injury to her left breast, as evidenced by photographs admitted into evidence. Thereafter, Gable advised Carlton to go to the hospital to seek medical treatment.

From our review of the record, we find no manifest error in the trial court's determination that Carlton failed to demonstrate that Theresa Teapot presented an unreasonable risk of harm. The evidence is undisputed that Vought keeps Theresa Teapot and the other dogs inside her home, only allowing them outside in the back yard or on a leash in the front yard. It is likewise undisputed that on the date of this incident, Theresa Teapot and the other dogs were inside the home prior to the incident. Furthermore, other than opening the door briefly to tell Carlton to leave and the resulting physical altercation between the parties, the front door to the home remained closed. Finally, both parties acknowledged that Theresa Teapot had not exhibited aggressive behavior toward Carlton or anyone else prior to this incident, even when strangers broke into the home. Accordingly, we find no error in the trial court's finding that Carlton failed to demonstrate that defendants are strictly liable for her injuries.

However, as noted by the supreme court in Pepper, if a plaintiff also asserts facts in her petition giving rise to a claim for negligence, a court should, after finding the absence of strict liability, go on to consider a negligence cause of action. Pepper, 03-0619 at p. 26, 864 So. 2d at 199. In the instant case, Carlton asserted in her petition various acts of negligence on the part of defendants, including breaching their legal duty of reasonable care. However, the trial court's reasons for judgment indicate that the only claim considered by the trial court was Carlton's claim of strict liability under La. C.C. art. 2321. A trial court's failure to consider a negligence

5

claim when one has been properly pled gives rise to legal error and this court's *de novo* review. Pepper, 03-0619 at p. 26, 864 So. 2d at 199. Accordingly, we now must consider whether Carlton established a claim of negligence against defendants.

In order for liability in negligence to attach under our traditional duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Pepper, 03-0619 at p. 27, 864 So. 2d at 199.

From our *de novo* review of the record as detailed above, we find that Carlton likewise failed to establish a claim of negligence against defendants. The parties testified that Vought kept her dogs inside the home, and that they were trained not to cross the threshold of the door unless they were on a leash. It is undisputed that the dogs were inside the home prior to the incident. Furthermore, these dogs had not exhibited any aggressive behavior previously, even in situations where the dogs and their owners were in danger. Therefore, we do not find that defendants breached any duty of reasonable care owed to plaintiff under the circumstances.

Furthermore, we find no merit in Carlton's argument on appeal that because Vought committed a battery against her that she is responsible for the consequences of her actions. Carlton did not assert in her petition that she was seeking damages resulting from any alleged battery, nor did she allege any facts supporting such an allegation.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to Tammy Carlton.

**AFFIRMED.**